**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**

STORM TEAM CONSTRUCTION, INC.,

    Plaintiff/Counterclaim Defendant,

v.                                                      Civil Action No. 2:23-cv-256-JES-KCD

STORMZ USA, LLC,

    Defendant/Counterclaim Plaintiff.

**STORM TEAM CONSTRUCTION'S MOTION TO DISMISS**
**STORMZ'S COUNTERCLAIMS**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff/Counterclaim Defendant STORM TEAM CONSTRUCTION, INC. ("Storm Team"), by and through undersigned counsel, hereby files this motion to dismiss all three Counterclaims of Defendant/Counterclaim Plaintiff STORMZ USA LLC's ("Stormz"). Counts I, II, and III should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim upon which relief can be granted. Stormz's counterclaims depend on the theory that Storm Team defrauded the USPTO, but Stormz has not alleged and cannot allege that the USPTO relied on any allegedly fraudulent statement that Storm Team made. For these and other reasons, the counterclaims should be dismissed in their entirety, and as grounds for this Motion states:

# INTRODUCTION

Since 2007, Storm Team has offered construction-related services, exclusively using the trademark "STORM TEAM CONSTRUCTION," for which it has garnered considerable goodwill.

In 2012, Storm Team sought to register word and design marks with the U.S. Patent and Trademark Office. On May 2, 2012 counsel first applied for Storm Team's word and design marks for construction services, under class 037.

On August 22, 2012, the examining attorney at first refused registration of Storm Team's marks because they were "merely descriptive" of the services Storm Team provides. (Defendant's Answer, Affirmative Defenses, and Counterclaim at Exhibit C, Page 2).[1]

In particular, the examining attorney stated that "[Storm Team's] mark is merely descriptive because it immediately conveys that applicant's services pertain to a group organized to work together in the art, trade, or work of

---

[1] A court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. *See, e.g.*, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). Trademark registrations are available through public record. So the Court may consider them on Storm Team's motion to dismiss under Rule 12(b)(6). Similarly, a court may consider materials attached to a complaint as part of the pleadings for a motion to dismiss under Rule 12(b)(6) without conversion to a motion for summary judgment. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

building relating to atmospheric disturbances manifested in strong winds accompanied by rain, snow, or other precipitation and often by thunder and lightning." (*Id.* at 2).

On October 2, 2012, Storm Team responded to the examining attorney, detailing two alternative justifications for the mark: first, that the mark was not merely descriptive and, second, that the mark constituted a double entendre, an exception to the rule on registration of descriptive marks.[2]

First, the proposed marks were not merely descriptive. Storm Team explained that "whereas 'storm,' 'team' or 'storm team' may be descriptive if used in some classes of goods or services, it does not follow that they would be in this context." Memorandum in Response to Office Action at 5, Ex. D to Stormz's Answer, Affirmative Defenses, and Counterclaim.

Storm Team explained that the registration was requested for construction services (class 037) and, in that context, the mark was not descriptive. The construction services offered by Storm Team included "most general contracting, building construction, repair and improvement services, which, in any given situation, may or may not include repair or restoration created from storm damage." *Id.* at 6. Storm Team explicitly acknowledged

---

[2] Storm Team responded to the examining attorney through counsel.

that, "all construction companies provide construction services on weather-damaged property as well as in other situations." *Id.* at 6. But because "often construction is not a repair and is not being done as a result of a weather-related incident," the then-filed-for mark was not merely descriptive. *Id.* at 6. Of course, "buildings are always built to withstand atmospheric conditions," so " 'storm' construction or repair is not significant in this context because it is always a primary underlying factor or consideration in the building and construction industry." *Id.* at 6.

Indeed, Storm Team added that "[t]he term 'storm,' as in a weather event, in the context of 'Storm Team Construction' has nothing to do with [Storm Team]'s services. [Storm Team] does not sell 'storms,' construct storms or repair storms (or for that matter 'storm teams'). The services are building construction services. Nor has [Storm Team] assembled any team to construct storms. Some construction or building services are offered as a means to repair storm damage, but the term by itself does not immediately convey this meaning." *Id.* at 10.

Instead, Storm Team explained, "[w]hen combined together, the resulting composite mark is 'storm team,' which creates a different and unique commercial impression. The combined term 'storm team' is unique and may conjure up images that do not suggest that the applicant is a group of people

4

that engage in storm damage repair. Rather, the alternate and intended branding concept tends to conjure up the image of a bold and powerful force that is teaming up with a customer to swiftly get the job done . . . ." *Id.* at 19.

Second, and in the alternative, Storm Team articulated that the use of "storm," "team," or "storm team" constituted a double entendre, which independently justifies the mark. *Id.* at 18. *See generally* TMEP (7th ed. Oct. 2010), at 1213.05(c). As counsel for Storm Team explained, "storm" both can refer to a weather event and can refer to a force and, similarly, "team" can be both a group but also a reference to competition. *Id.* at 21. Furthermore, when combined, "Storm Team" can represent "a group of persons associated to work together in a remarkable or energetic fashion that can 'assault' the task or 'rush to perform the task' (thus take it by storm)." *Id.* at 21.

On February 19, 2013, the U.S. Patent and Trademark Office registered the "Storm Team Construction" name mark, and on March 12, 2013 the design mark was registered. The U.S. Patent and Trademark Office did not state whether it relied on one or both arguments offered by counsel in registering both marks. Storm Team has owned registered word and design marks since early 2013.

Almost a decade later, in 2022, Stormz started offering services in the same industry and using confusingly similar marks. In January 2023, Storm

5

Team directed Stormz to cease and desist. *See* January 13, 2023 Cease and Desist Letter. Stormz refused to do so, forcing Storm Team to file the above-captioned suit on April 17, 2023. (Dkt. No. 1). Three months later, on July 13, 2023, Defendant filed its Answer and Affirmative Defenses. (Dkt. No. 22).[3]

Apparently unable to defend itself on the merits of Storm Team's claim, Stormz also filed a countercomplaint with three counts. In brief, Stormz seeks cancellation of each of Storm Team's registered marks, on the grounds of alleged fraud on the Patent and Trademark Office. Stormz also seeks a judgment that Storm Team, by filing a lawsuit protecting its intellectual property, engaged in an unfair trade practice. These counterclaims—like Stormz's use of Storm Team's intellectual property—cannot be defended. They should be dismissed as explained below.

## ARGUMENT

Stormz's counterclaims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim upon which relief can be granted. Stormz counterclaims for cancellation of Storm Team's marks fail for three reasons:

---

[3] Stormz requested and Storm Team agreed to a considerable extension of time for Stormz to answer the complaint.

1. Stormz does not allege that Storm Team made a fraudulent statement knowing it was false and with an intent to defraud the PTO.

2. Stormz does not allege that the PTO relied on the allegedly fraudulent statement, and

3. The counterclaims are barred by the statute of limitations.

Stormz also fails to state a claim for unfair trade practices under Florida law because it does not and cannot allege that Storm Team filed this lawsuit solely as a sham to restrain trade.

## I. Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) questions the sufficiency of the pleadings. Federal Rule of Civil Procedure 8(a)(2) requires a counterclaim to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss its Counterclaims, Stormz must allege facts that, if true, are sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court accepts well-pleaded factual allegations as true, but the Court need not accept as true "'bare assertions' that 'amount to nothing more than a "formulaic

recitation of the elements'" of a claim." *APR Energy, LLC v. Pakistan Power Res., LLC*, 653 F. Supp. 2d 1227, 1231 (M.D. Fla. 2009).[4]

## II. Stormz fails to adequately plead the necessary elements of either claim for cancellation of Storm Team's marks.

Stormz has failed to state a claim for cancellation of either Storm Team mark based on fraud. To bring a claim for fraud in connection with an application for a registered mark, a party must allege that the applicant knowingly made false, material representations of fact in its application for the mark. *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.,* 522 F.3d 1200, 1209 (11th Cir. 2008). First, Stormz does not allege that Storm Team made a fraudulent statement, nor does it allege with any specificity that Storm Team made that statement knowing it to be false and with the intent to deceive the PTO. Second, it does not allege that the PTO relied on the allegedly fraudulent statement. For each of these reasons, both claims must fail.

---

[4] And Federal Rule of Civil Procedure 9 requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud," particularly when alleging that a mark "should be cancelled due to fraud in the registration process." Noveshen v. Bridgewater Assocs., LP, 47 F. Supp. 3d 1367, 1372-1373 (S.D. Fla. 2014).

### A. Stormz does not allege that Storm Team made a knowingly fraudulent statement.

Stormz alleges that Storm Team "fraudulently represented to the USPTO that storms are not a significant feature of its services in an effort to obtain a federal trademark registration." Countercl. ¶39. Stormz argues that "[t]hese statements are in direct conflict with the statements made by [Storm Team] in its Complaint and direct contravention of STC's advertising of its business." Countercl. ¶26. Stormz's counterclaim for cancellation depends on these allegations. But these allegations of fraud are not plausible on their face because the statement Storm Team allegedly made to the Patent and Trademark Office was true.

As explained in the representations to the PTO, storms are *not* a significant feature of Storm Team's services for construction. Storm Team does *not* offer storms or other weather phenomena. Nor does Stormz allege that Storm Team does offer weather phenomena. Rather, Stormz alleges that "STC continuously states that storm damage repair is not a significant feature of its goods or services." *Id.* ¶ 24. But Stormz's allegation cites no contradictory statement to the PTO. Nor can it, because Storm Team never said that storm damage repair is *not* a significant feature of its services. Instead, Storm Team conveyed that storm damage repair fell outside its "construction services" (class 037), under which Storm Team registered its

9

mark. Memorandum in Response to Office Action at 5, Ex. D to Stormz's Answer, Affirmative Defenses, and Counterclaim. So Stormz fails to allege a *false* statement made to the U.S. Patent and Trademark Office.

Even if Stormz had alleged that Storm Team made a false statement, Stormz has not alleged that Storm Team made that statement knowing it was false.[5] Instead, they merely recited the elements of a claim and asserted statements about Storm Team's mark registration. This is inadequate. At the pleading stage for cancellation of a trademark, "the elements of fraud must be pleaded *with particularity* and [must] contain explicit rather than implied expression of the circumstances constituting fraud." *Zox LLC v. Zox*, No. CV 21-1609 PA-SK, 2021 WL 4816664, *6 (slip op.) (C.D. Cal. July 12, 2021) (citation omitted) (emphasis added). "Pleadings of fraud which rest solely on allegations that the trademark applicant or registrant made material representations of fact in connection with its application or registration which it 'knew or should have known' to be false or misleading are an insufficient pleading of fraud because it implies mere negligence and

---

[5] Stormz compares the statements Storm Team made in its original filings to the USPTO with statements made on Storm Team's websites, which Stormz presumably accessed in 2023. Countercl. ¶39. It makes no allegations of what Storm Team's websites stated in 2012, over a decade ago. Reliance on statements made on a website in 2023 cannot support that any alleged misstatements were knowingly untrue when made back in 2012.

10

negligence is not sufficient to infer fraud or dishonesty." *Asian & W. Classics B.V. v. Selkow*, 92 USPQ2d 1478, 1479 (TTAB 2009).

In any event, even if Stormz had alleged that Storm Team made a knowingly false statement, Stormz's claims would still fail because it does not allege that Storm Team intended to defraud the U.S. Patent and Trademark Office.

**B.  Stormz does not and cannot allege that the U.S. Patent and Trademark Office relied on the allegedly fraudulent statement.**

Even if Stormz had alleged that Storm Team made a knowingly false statement to the U.S. Patent and Trademark Office with the intent to defraud the PTO, the counterclaims for cancellation still should be dismissed because Stormz has not alleged the PTO relied on the allegedly fraudulent statement. Nor could it. Storm Team offered a separate, independently-viable argument for registration in the alternative to the allegedly fraudulent statement: that "Storm," "Team," and "Storm Team" each constitute a double entendre.

Stormz does not and cannot allege that the PTO identified the argument on which it relied because the PTO did not state which argument it accepted, if any, when it issued the registration. Therefore, Stormz has not set forth any facts supporting the necessary fraud element that the PTO

11

relied on the alleged fraudulent statement. As reliance is a necessary element of cancellation of marks for fraud, this counterclaim must be dismissed. *Around the Clock A/C Serv., LLC v. Proquest, Inc.,* No. 220CV304FTM29NPM, 2020 WL 6273700, at *2 (M.D. Fla. Oct. 26, 2020); *see also Silva v. Swift,* No. 317CV00814J34JRK, 2017 WL 9249214, at *5 (M.D. Fla. Dec. 12, 2017).

### III. The statute of limitation has run on Stormz's cancellation claims.

Regardless of the merits, Stormz's counterclaims contending that Storm Team obtained its registered trademarks through fraud are time-barred. Both counterclaims depend on 15 U.S.C. section 1119. Countercl. ¶ 17. Section 1119 is an enabling statue granting federal courts the power to cancel registrations if necessary.[6] Section 1120 then establishes the basis for a finding of civil liability for false or fraudulent registration. *Id.* § 1120. Section 1120 lacks a statute of limitations. *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, No. 9:17-CV-80476, 2018 WL 1138304, at *1 (S.D. Fla. Mar. 2, 2018).

Because a claim for fraud under section 1120 is "akin to fraud generally," federal courts look to the relevant state statute of limitations for analogous types of actions. *Id.* Under section 95.11(3)(j) of the Florida statutes, action for

---

[6] The statute provides, in relevant part: "In any action involving a registered mark[,] the court may . . . order the cancelation of registrations, in whole or in part, . . . and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

12

fraud must be brought within four years of the date that the fraud was, or with due diligence should have been, discovered. *Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1371 (S.D. Fla. 2013) (citing F.S.A. § 95.11(3)(j) which is now F.S.A. § 95.11(3)(i)).

The claim under section 1120 accrues the day the trademark registration is procured in the USPTO. *Royal Palm Properties*, 2018 WL 1138304, at *1. In other words, the statute of limitations begins to run from the date of trademark registration. *Id*. "Registration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072.

Storm Team registered its marks on March 12, 2013. Four years from March 12, 2013 is March 12, 2017. Stormz filed its counterclaims on July 13, 2023. So, Stormz's counterclaims are time-barred.

## IV. Stormz fails to state a claim for unfair trade practices under Florida's Deceptive and Unfair Trade Practices Act.

Stormz alleges in Counterclaim III that Plaintiff violated the Florida Deceptive and Unfair Trade Practices Act (FDUPTA) by "merely attempting to block competition within a similar field of work by improperly asserting rights to the term 'STORM' and baselessly accusing STORMZ of trademark infringement." Answer ¶ 55.

The only practice that Stormz alleges to be unfair under FDUPTA is Storm Team's assertion of its intellectual property rights through the underlying litigation.

An allegation that a party filed a harassing *and meritless* lawsuit may raise a right to relief under the Uniform Deceptive Trade Practices Act if—and only if—the allegation is well supported and plausibly alleges that the lawsuit is a mere sham. As Judge Cohn has explained, "litigation immunity akin to the immunity provided by the *Noerr-Pennington* doctrine applies to . . . the FDUTPA," and that "litigation immunity" bars claims under FDUTPA if the litigation was not a "sham." *Atico Int'l USA, Inc. v. LUV N' Care, Ltd.,* No. 09-60397-CIV-COHN, 2009 WL 2589148, *2-3 (S.D. Fla. Aug. 19, 2009).

In general, a plaintiff may be held liable only if a lawsuit is both objectively unreasonable and also was brought, subjectively, for sham purposes. *Id.* at 3. The burden to prove that the underlying litigation is a sham falls on the party making the claim. *Id.* at 3.

Whether a litigation constitutes a "sham" depends on two different inquiries. First, a litigation is only a sham if it is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Silverhorse Racing, LLC v. Ford Motor Co.*, 232 F. Supp. 3d 1206, 1211 (M.D. Fla. 2017) (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus.,*

14

*Inc.*, 508 U.S. 49, 50 (1993)). Second, and only after the first requirement is satisfied, the court will then examine "the subjective intent to inhibit competition." *Id.*

Thus, a lawsuit is reasonable if an objective litigant could conclude the suit is reasonably calculated to elicit a favorable outcome. *Id.* Conversely, the institution of litigation may be the basis for a counterclaim only if the lawsuit is a mere sham to cover what is nothing more than an attempt to interfere directly with the business relationships of a competitor. *See id.*

Stormz has not shown to any extent how the underlying litigation is a sham. Specifically, Stormz's contention that Storm Team is pursuing non-meritorious litigation is unavailing unless it can show that Storm Team's Complaint is lacking in the likelihood of confusion analysis—the basis for Storm Team's complaint. "The holder of a registered mark (incontestable or not) has a civil action against anyone employing an imitation of it in commerce when such use is likely to cause confusion." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2005).

Likelihood of confusion is an inherently factual issue. It depends on human reactions to situations incapable of precise assessment. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986). Determining whether there is a likelihood of confusion depends on a seven factor test: "(1) strength of the

15

mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public." *Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010). Moreover, "the type of mark and the evidence of actual confusion [are] the two most important factors." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997).

For this motion, it is enough to note that Storm Team's Complaint shows the strength of the mark through its incontestability, Compl. ¶13, as well as the substantial similarities between Storm Team's registered marks and Stormz's marks and trade dress, Compl. ¶25-26. And the Complaint has alleged both potential and actual confusion between Storm Team's registered marks and Stormz's marks. Compl. ¶31. While the complaint's allegations satisfy the other factors of the likelihood of confusion test, this preliminary show of evidence alone shows that the litigation does not constitute a sham, nor non-meritorious litigation. Stormz therefore fails to state a claim for unfair

16

trade practices due to harassing and non-meritorious litigation under Florida's Deceptive and Unfair Trade Practices Act.

## **CONCLUSION**

WHEREFORE, Plaintiffs/Counter-Defendants respectfully request that this Court enter an order dismissing Counts I, II, and III of the Defendant/Counter-Plaintiff's Counterclaim, with prejudice, and for such other relief as the Court deems to be just and appropriate under the circumstances.

Respectfully Submitted,

Date: August 18, 2023

*/s/ Michael F. Jacobson*
*Taft, Stettinius & Hollister LLP.*
Michael F. Jacobson (FL Bar No. 979902)
mjacobson@taftlaw.com
27777 Franklin Rd., Suite 2500
Southfield, MI 48034

Leon D. Bass (OH Bar No. 0069901)
*PRO HAC VICE*
lbass@taftlaw.com
41 S. High Street, Suite 1800
Columbus, OH 43215

17

## **LOCAL RULE 3.01(g) CERTIFICATION**

Counsel has conferred with Defendant prior to filing this motion via telephone, and Defendant opposes the dismissal of its counterclaims.

## **CERTIFICATE OF SERVICE**

I certify that on August 18, 2023, I electronically served the foregoing papers to all attorneys of record.

*/s/ Michael F. Jacobson*