```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

STORM TEAM CONSTRUCTION,
INC.,

        Plaintiff/Counter-
        Defendant,

v.                                  Case No:   2:23-cv-256-JES-KCD

STORMZ USA, LLC,

        Defendant/Counte
        r-Plaintiff.
_____

## OPINION AND ORDER

This matter comes before the Court on review of counter-defendant Storm Team Construction, Inc.'s (Storm Team) Motion to Dismiss Counterclaims (Doc. #36) filed on August 18, 2023. Counter-plaintiff Stormz USA, LLC (Stormz) filed a Response in Opposition (Doc. #37) on September 1, 2023 and, with permission from the Court, Storm Team filed a Reply (Doc. #42) on September 20, 2023. For the reasons set forth below, the motion is granted.

**I.**

This action involves Storm Team's two registered trademarks with the U.S. Patent and Trademark Office (PTO), identified by Registration Numbers 4,291,436 (the Word Mark) and 4,300,455 (the

Design Mark). The former trademarked 'Storm Team Construction,' while the latter trademarked Storm Team's logo.[1]

The PTO initially refused the trademarks under Section 2(e) of the Lanham Act, finding the marks "merely descriptive because it immediately conveys that applicant's services pertain to a group organized to work together in the art, trade, or work of building relating to atmospheric disturbances manifested in strong winds accompanied by rain, snow, or other precipitation and often by thunder and lightning." (Doc. #22, Ex. 3, p. 2); (Doc. #22, Ex. 9, p. 2.)[2]

Storm Team filed a memorandum in response (the memo) in 2012, arguing that the words 'storm', 'team' or collectively 'storm team' were not merely descriptive, but that even if they were, the trademarks should still be granted because 'storm' and 'storm team'

---

[1] The registration certificate for the Word Mark reads that "THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STLYE, SIZE, OR COLOR. NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE 'CONSTRUCTION', APART FROM THE MARK AS SHOWN." STORM TEAM CONSTRUCTION, Registration No. 4,291,436.

The registration certificate for the Design Mark describes the mark as "CONSIST[ING] OF THE STYLIZED WORDING 'STORM TEAM' ABOVE THE STYLIZED WORDING 'CONSTRUCTION' WITHIN A RECTANGULAR CARRIER WITH ROUNDED EDGES. ABOVE THE WORDING IN THE MARK IS THE DESIGN OF AN EAGLE HEAD." STORM TEAM CONSTRUCTION, Registration No. 4,300,455.

[2] In its Answer and Counterclaims (Doc. #22), Stormz's labeled its exhibits in letter format (A,B,C, etc.), including this one. Instead of the alphabetical letters used by Stormz, the Court will cite each exhibit by the numerical number assigned to it by the Court's CM/ECF system.

2

are double entendres. (See id., Ex. 10.) The PTO subsequently issued the trademarks and their accompanying certificates in early 2013.

In April 2023, Storm Team filed a five-count Complaint against Stormz asserting claims for federal trademark infringement, unfair competition, dilution, violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), and Florida common law trademark infringement. (See Doc. #2.)

Stormz filed an Answer generally denying the allegations, and three Counterclaims: (1) Cancellation of the Word Mark for fraud; (2) Cancellation of the Design Mark for fraud; and (3) Violation of FDUTPA. The cancellation Counterclaims assert that the following statement from Storm Team's 2012 memo was fraudulent:

> It is unlikely that the mark would immediately convey that Applicant's services were somehow related to storms [as in atmospheric disturbances with strong winds, rain, thunder, lightning, etc.]. Even if it did, the evidence does not show that Applicant's services have anything to do with storms, or that 'storms' 'teams' or 'storm teams' are significant features of the services.

(Doc. #22, pp. 11, 14, ¶¶ 25, 45)(quoting id., Ex. 10, pp. 14, 38.) The cancellation Counterclaims are based on Stormz's theory that Storm Team's "Work Mark" and "Design Mark must be cancelled" because Storm Team's 2012 memo "fraudulently represented to the []PTO that storms are not a significant feature of its services in an effort to obtain a federal trademark registration." (Id., pp. 13, 15, ¶¶ 39, 48.) The FDUPTA Counterclaim alleges Storm Team "is

3

merely attempting to block competition within a similar field of work by improperly asserting rights to the term 'STORM' and baselessly accusing STORMZ of trademark infringement." (Id., p. 16, ¶ 55.)

Storm Team now moves "to dismiss all three Counterclaims [with prejudice] . . . under Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim upon which relief can be granted." (Doc. #36, p. 1.) Stormz disagrees, asserting that the motion should be denied, but seeks the opportunity to amend in the alternative. (Doc. #37, p. 8.)

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As previously noted by the undersigned in Pk Studios, Inc.,

> In evaluating a Rule 12(b)(6) motion seeking to dismiss a counterclaim for failing to comply with Rule 8(a), the Court must accept as true all factual allegations in the counterclaim complaint and "construe them in the light most favorable to the [counterclaim-]plaintiff." Baloco ex rel. Tapia v. Drummond Co., 640 F.3d 1338, 1345 (11th Cir. 2011). However, mere "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).
>
> By extension, "[a] motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same

4

> manner as a motion to dismiss a complaint." Sticky Holsters, Inc. v. Ace Case Mfg., LLC, No. 2:15-CV-648-FTM-29CM, 2016 WL 1436602, at *6 (M.D. Fla. Apr. 12, 2016) (quoting Geter v. Galardi S. Enters., Inc., 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014)). Thus, to avoid dismissal under Rule 12(b)(6), each counterclaim must contain sufficient factual allegations to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To do so requires "enough facts to state a claim to relief that is plausible on its face." Id. at 570.
>
> This plausibility pleading obligation demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." (citation omitted)). Instead, the counterclaim complaint must contain enough factual allegations as to the material elements of each claim to raise the plausible inference that those elements are satisfied, or, in layman's terms, that the counterclaim-plaintiff has suffered a redressable harm for which the counterclaim-defendant may be liable.

Pk Studios, Inc. v. R.L.R. Invs., LLC, No. 2:15-CV-389-FTM-99CM, 2016 WL 4529323, at *8 (M.D. Fla. Aug. 30, 2016).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for a fraud claim. A plaintiff "must state with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b). That "means identifying the who, what, when, where, and how of the fraud alleged." Omnipol, A.S. v. Multinational Def. Servs., LLC, 32 F.4th 1298, 1307 (11th Cir. 2022)(citing Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008)). More specifically, the complaint must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (citing Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

### III.

Storm Team presents two arguments for dismissal of the cancellation Counterclaims, asserting (1) they are barred by the statute of limitations, and (2) the elements are not sufficiently pled. Storm Team also argues that the FDUTPA claim should be dismissed for failure to state a claim.

**A. The cancellation Counterclaims are not barred by the statute of limitations**

Storm Team argues that federal law is silent as to a statute of limitations for cancellation of trademarks for fraud, so the Court should look to Florida law and impose its four-year-statute of limitations for fraud claims. (Doc. #36, pp. 12-13)(citing Fla.

6

Stat. §95.11(3)(j)). Stormz counters that federal law is not silent, since 15 U.S.C. § 1064(3) expressly states a fraudulently obtained trademark can be cancelled at any time. (Doc. #37, p. 6.) The Court agrees with Stormz.

"A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense," Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977)[3], but a district court can dismiss the claim "only if it is apparent from the face of the complaint that the claim is time-barred." United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018), aff'd, 139 S. Ct. 1507 (2019)(quoting La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)). The Eleventh Circuit has held that "[a]t any time, a party may petition to cancel a registered mark on the ground that the registration was procured by fraud, even if that mark has become incontestable." Sovereign Mil. Hosp. Order of St. John v. Florida Priory of the Knights Hosp., 702 F.3d 1279, 1289 (11th Cir. 2012)(citing 15 U.S.C. §§ 1064(3), 1119); see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 202 (1985)("A mark may be canceled at any time for certain specified grounds,

---

[3] "Decisions of the former Fifth Circuit issued before October 1, 1981 constitute binding precedent in the Eleventh Circuit." United States v. Bird, 79 F.4th 1344, 1353 n.4 (11th Cir. 2023)(citing Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc)).

7

including that it was obtained fraudulently or has become generic." (citing 15 U.S.C. § 1064)). Therefore, Stormz's Counterclaims seeking the cancellation of Storm Team's trademarks because they were allegedly procured by fraud are not time-barred.

### B. The cancellation Counterclaims are not sufficiently pled

"The Lanham Act gives federal courts the authority to cancel trademarks that the PTO has registered." Royal Palm Properties, LLC v. Pink Palm Properties, LLC, 950 F.3d 776, 782 (11th Cir. 2020)(citing 15 U.S.C. § 1119). "In order to successfully prosecute a claim for trademark cancellation, the challenger of a federally registered mark must demonstrate '(1) [t]hat it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration.'" Id. (alteration in original)(quoting Coach House Rest., Inc. v. Coach and Six Rests., Inc., 934 F.2d 1551, 1557 (11th Cir. 1991)). One such valid ground is when the registration was obtained fraudulently. Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1209 (11th Cir. 2008) (citing § 15 U.S.C. §1064(3)).

### 1. Standing

Storm Team does not challenge Stormz' standing and "the Lanham Act sets a low statutory-standing bar: 'The requirement for standing [to pursue a trademark-cancellation claim] is fairly easy to satisfy in the vast majority of cases.'" Royal Palm Properties,

8

LLC, 950 F.3d at 788 (alteration in original)(quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 20:46 (5th ed. 2019)). A party has standing under the Lanham Act to pursue a trademark cancellation claim if it has a direct and personal stake in the outcome and believes that it is or will be damaged by the registration of the mark. Id. (internal citations omitted).

Stormz satisfies that threshold due to its direct commercial interest in being able to use its name in the marketplace. This lawsuit threatens to strip Stormz of its business name. If the marks were to be cancelled, Stormz would be free to continue using its name without fear of defending another lawsuit and all the costs and time that entails. That satisfies the Lanham Act's standing requirement. Royal Palm Properties, LLC, 950 F.3d at 788 (finding a direct commercial interest to suffice the standing requirement); Fla. Virtual Sch. v. K12, Inc., No. 6:20-CV-2354-GAP-EJK, 2023 WL 4676015, at *7 (M.D. Fla. May 30, 2023).

### 2. Cancellation of marks obtained fraudulently

Stormz seeks cancellation of the marks based upon fraud. "An applicant commits fraud when he 'knowingly makes false, material representations of fact in connection with an application for a registered mark.'" Sovereign Mil. Hosp. Order of St. John, 702 F.3d at 1289 (quoting Angel Flight, 522 F.3d at 1209). "Fraud further requires a purpose or intent to deceive the PTO in the

9

application for the mark." Id. (citing In re Bose Corp., 580 F.3d 1240, 1243, 1245 (Fed. Cir. 2009)). Altogether:

> The elements of fraud in trademark registration are as follows: (1) "[t]he challenged statement was a *false* representation regarding a *material* fact. (2) The person making the representation *knew* that the representation was false ('scienter'). (3) An *intent to deceive* the []PTO. (4) Reasonable *reliance* on the misrepresentation. (5) *Damage* proximately resulting from such reliance."

Church Girls, LLC v. Rodgers, No. 2:18-CV-14232, 2018 WL 5923436, at *2 (S.D. Fla. Nov. 13, 2018)(quoting McCarthy on Trademarks and Unfair Competition § 36:61). "The party seeking cancellation on the basis of fraud" carries the "heavy burden" of "prov[ing] its claim by clear and convincing evidence," with "any doubt . . . be[ing] resolved against the charging party." Sovereign Mil. Hosp. Order of St. John, 702 F.3d at 1289 (internal citations omitted).

"[F]raud in the procurement of a trademark registration must be alleged with particularity according to the requirements of Federal Rule of Civil Procedure 9(b)." 6 McCarthy on Trademarks and Unfair Competition § 31:84; Mandala v. Tire Stickers, LLC, 829 F. App'x 896, 901 (11th Cir. 2020)(finding that an allegation of a trademark procured by fraud "sound[s] in fraud and must comply with the heightened pleading standard."). "Rule 9(b) requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud." Id. at § 31:84. "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." In re Bose

10

Corp., 580 F.3d at 1243 (quoting Smith Int'l, Inc. v. Olin Corp., 209 USPQ 1033, 1044 (T.T.A.B. 1981)).

Stormz relies on two sources to show the challenged statement is fraudulent: Storm Team's Complaint and Storm Team's websites. (See Doc. #22, pp. 11, 14, ¶¶ 26, 46.) For example, the Complaint states that Storm Team "has offered storm reconstruction services nationally for more than fifteen years," (Doc. #2, ¶11), which Stormz argues shows Storm Team's 2012 memo fraudulently stated storms are not a significant feature of its services. (See Doc. #22, pp. 12-13, 15, ¶¶ 31, 39, 47-48.) Similarly, Storm Team's website contains a tab titled "Storm Damage" and a video that states Storm Team has "complete[d] over $100 million dollars in restoration projects after major storms." (Id., pp. 11-12, 15, ¶¶ 28-29, 48.)

Storm Team responds that "[r]eliance on statements made . . . in 2023 cannot support that any alleged misstatements . . . made back in 2012" were fraudulent. (Doc. #36, p. 10 n.5.) Under the facts in this case, the Court agrees. The Eleventh Circuit has said that "reliance on facts that arose *after* [a party has] filed its application with the Trademark Office" is improper because "[t]hese particular facts are irrelevant to the question whether [the party] perpetrated a fraud in its application." Progressive Emu Inc. v. Nutrition & Fitness, Inc., 655 F. App'x 785, 798 (11th

11

Cir. 2016).[4] Even if these statements "are in direct conflict" (Doc. #22, pp. 11, 14, ¶¶ 26,46) with the 2012 memo, as Stormz argues, they would not establish a plausible claim of fraud. The 2023 statements could show that the 2012 statement would not be true if made today, but do little to establish the 2012 statements were knowingly false when made. Because the cancellation Counterclaims fail to satisfy the heightened pleading standards for fraud, they will be dismissed without prejudice.

Additionally, Storm Team argues that the cancellation Counterclaims must be dismissed because they fail to allege reliance by the PTO. (See Doc. #36, pp. 11-12.) Stormz responds that the Counterclaims do allege "that the []PTO relied on the fraudulent statements and ultimately registered the marks." (Doc. #37, p. 4.) A careful reading of the Counterclaims, however, reveals no such explicit allegation. Rather than pointing to any such language in the Counterclaims, Stormz simply invites this "Court to draw a reasonable inference that [PTO] relied on these [allegedly] fraudulent statements." (Doc. #37, p. 5.) The Court declines to do so.

**C. The FDUTPA Counterclaim fails to state a plausible claim**

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

12

The FDUTPA outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce". Fla. Stat. § 501.204(1).[5] Section 501.211(1) allows "anyone aggrieved by a violation of" FDUTPA to seek declaratory or injunctive relief, and section 501.211(2) provides that "a person who has suffered a loss as a result of a [FDUTPA] violation . . . may recover actual damages . . . ." Id.

"[T]here are basically three elements that are required to be alleged to establish a claim pursuant to the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." Point Conversions, LLC v. WPB Hotel Partners, LLC, 324 So. 3d 947, 957 (Fla. 4th DCA 2021); see also TLO S. Farms, Inc. v. Heartland Farms, Inc., 282 So. 3d 145, 148 (Fla. 2d DCA 2019); Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). "To satisfy the first element, the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" Carriuolo v. Gen. Motors Co., 823 F.3d 977,

---

[5] The statute defines 'trade or commerce' to be "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated" and "include[s] the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity." Fla. Stat. § 501.203(8).

13

983-84 (11th Cir. 2016)(quoting State, Off. of the Att'y Gen. v. Commerce Comm. Leasing, LLC, 946 So.2d 1253, 1258 (Fla. 1st DCA 2007)).[6]

Stormz alleges that in "this meritless lawsuit," Storm Team is "baselessly accusing [it] of trademark infringement" and that "[b]y attempting to damage [Stormz]'s reputation and attempting to require [it] to rebrand and rebuild its reputation in the marketplace, [Storm Team] has violated FDUPTA and continues to cause [Stormz] damages." (Doc. #22, p. 16, ¶¶ 55-57.) At its core, the Counterclaim alleges Storm Team violated FDUTPA because it filed a trademark infringement lawsuit against Stormz.

The FDUTPA Counterclaim falls. Stormz fails to allege that Storm Team's trademark infringement lawsuit is likely to deceive a consumer acting reasonably in the same circumstances. The Court has dismissed a similar counterclaim in a prior lawsuit, explaining that "[c]onduct occurring during the exercise of a legal remedy-including filing a lawsuit or issuing pre-suit demand letters-cannot give rise to a FDUTPA claim because the pursuit of a legal remedy does not fall within FDUTPA's definition of 'trade

---

[6] The statute defines a 'consumer' to be "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination." Fla. Stat. § 501.203(7).

or commerce.'" Boat Owners Ass'n of U.S. v. Flagship Towing LLC, No. 2:15-CV-197-FTM-29CM, 2015 WL 4548698, at *2 (M.D. Fla. July 28, 2015)(citing Baker v. Baptist Hosp., Inc., 115 So.3d 1123, 1124 (Fla. 1st DCA 2013)). For these reasons, the FDUTPA Counterclaim is dismissed for failure to state a claim.

Having found the Counterclaims must be dismissed, the Court need not reach Storm Team's additional arguments. Storm Team's request for such a dismissal to be with prejudice, however, is declined for it is inappropriate at this stage of the proceedings. Instead, the Court will grant Stormz' alternative request and grant leave to amend.

Accordingly, it is now

**ORDERED**:

Counter-defendant Storm Team Construction, Inc.'s Motion to Dismiss Counterclaims (Doc. #36) is **GRANTED** as set forth above. Stormz USA, LLC's Counterclaim[s] (Doc. #22) are **dismissed without prejudice** to filing an Amended Answer, Affirmative Defenses and Counterclaims within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __26th__ day of October, 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record